UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| MATILDE MICHEL SANCHEZ, | ) | No. CV 11-07869-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

    Plaintiff raises the following issues:

    1.    Whether the decision of the Administrative Law Judge ("ALJ")

        is supported by substantial evidence (JS at 3); and

2.    Whether the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective symptoms (JS at 13).

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

## I

## THE ALJ FAILED TO PROVIDE CLEAR AND CONVINCING REASONS TO REJECT PLAINTIFF'S SUBJECTIVE COMPLAINTS

**A. Introduction.**

This is a case in which Plaintiff received a very significant amount of treatment for joint pain, ultimately resulting in a diagnosis of an autoimmune disorder. There are hundreds of pages of treatment notes, yet there is not an opinion from a treating physician as to Plaintiff's exertional capacity. The Court cannot fault the agency or the ALJ for failure to provide this information. The agency requested Plaintiff's treating sources to provide such statements (AR 191, 345), and the ALJ issued a subpoena to Harbor-UCLA Medical Center requiring it to produce Plaintiff's medical records (AR 141, 392-431). Plaintiff is not a native English speaker, and was assisted by an interpreter at the hearing before the ALJ. (AR 35-48.) Indeed, Plaintiff's preferred language is Spanish and she does speak or understand English. (AR 156.) The highest grade of school that

Plaintiff completed was fifth grade in Mexico. (AR 162.) Consequently, while, as the Court has indicated, the agency and the ALJ took appropriate steps to develop the record, nevertheless, it may also be observed that Plaintiff may not have had the sophistication herself to obtain diagnostic and treatment records, and the fact that she did not have the assistance of counsel underscores the point.

What results from the above combination of factors is a medical record which is replete with extensive treatment notes, but a lack of diagnostic opinions from treating sources. Thus, the ALJ made a determination of Plaintiff's RFC based primarily upon the analysis of a DDS analyst who does not appear to be a physician, and a one-time examination by a consultative internist. (See AR 29, 386-391, 379-384.) Plaintiff's first issue focuses upon the sparse basis upon which the ALJ determined Plaintiff's RFC. The Court is sympathetic to this argument, but, for reasons to be stated, sees no need to make an ultimate determination. From a strictly legal point of view, the ALJ may well have been justified in relying upon a single examination of a consultative examiner and a report of a DDS analyst in determining Plaintiff's RFC. But, since the Court will be remanding this matter for further hearing based upon Plaintiff's second issue, and, it is likely that Plaintiff will be represented at the remand proceedings, there will be a better chance that the record may be further developed. Therefore, the Court will turn to the second issue, which is the credibility determination.

//
//
//
//

**II**

**THE ALJ'S CREDIBILITY DETERMINATION IS DEFICIENT,**

**AND PLAINTIFF'S CREDIBILITY WILL BE REEVALUATED ON REMAND**

The following constitutes the entire credibility discussion and analysis of the ALJ as contained in his Decision:

> "However, I must also address the credibility of [Plaintiff] as it relates to statements made regarding the extent and severity of [Plaintiff's] impairments and the limitations they cause. One factor affecting [Plaintiff's] credibility is her treatment history including the prescription medications given to [Plaintiff] by her treating physicians. [Plaintiff] has records of treatment going back to the late 1990s. This shows that [Plaintiff] had access to treatment and continues to have access to treatment for her conditions. [Plaintiff] even testified that she has access to treatment through Medi-Cal. In spite of the access to treatment the records show that [Plaintiff's] condition was not always diagnosable, meaning that [Plaintiff] had numerous complaints but did not always have a formal diagnosis to correspond to her complaints. Additionally, even though her records show a diagnosis of systemic sclerosis, [Plaintiff] testified that the specific diagnosis for her condition is still uncertain. In sum, [Plaintiff] has access to treatment and is using her access to seek treatment for her numerous complaints; however, her complaints do not always receive a formal diagnosis which shows little support for here overall allegations. Thus, I find [Plaintiff's] credibility is diminished.

> Also affecting [Plaintiff's] credibility is the consistency of her statements with the medical evidence of record and with other statements she made concerning her condition. [Plaintiff] indicated that she is depressed as a result of her physical condition. However, [Plaintiff] has not sought treatment for her alleged depression. As such [Plaintiff] does not feel her depression is disabling even though she alleges that it is present. Therefore her allegations of depression are inconsistent with the objective medical evidence of record. Thus, I find [Plaintiff's] credibility is further diminished."

(AR 30.)

The ALJ is certainly correct in observing that Plaintiff has undergone extensive and continuous treatment for her symptoms. As previously noted, the record contains substantial and extensive treatment notes. The relevant period for this case begins in December 2006. Plaintiff was treated at La Vida Multi-Specialty Medical, where her symptoms included pain and swelling in her hands, wrists, shoulders, knees, and her finger bones. (AR 386-391.) Despite the fact that Plaintiff indicated that she was prescribed and was taking Prednisone, she indicated her symptoms had continued for the past four to five months. The treating doctor confirmed her complaints, and on physical examination, found that there was swelling and edema, tenderness, weakness and swelling of the hands and the finger joints, pain and swelling of the wrists, and effusion of the knees. (Id.) The doctor doubled her Prednisone prescription and added another drug, Methotrexate. She was diagnosed at that time with inflammatory

5

arthritis ruling out a diagnosis of scleroderma.

In February 2007, there are followup treatment notes which appear to corroborate Plaintiff's pain complaints. In fact, she indicated her pain was so intense that the drug Darvocet provided only minor or mild benefit. An examination indicated she had a markedly decreased finger flexion, and painful inflammation of her finger. (AR 366.) Her diagnosis at that time was systemic sclerosis. Her treatment medications were changed from Prednisone, which had only helped her minimally, to another drug, Lisinopril and extra-strength Vicodin. She was ordered off work until August of 2007. Her treating doctors considered her disabled in February 2007 until at least August of that year. (AR 368.)

There are further treatment notes from La Vida which document continued similar symptoms but fail to show improvement. She presented with weakness, swelling, and trouble even making a fist. (AR 366.) Although by September 2007 she had some temporary mild improvement, she still suffered from diffuse arthralgias with shoulder, hands and knee pain. (AR 363.) In treatment notes from November 2007 she still complained of pain in her knees, fingers and shoulders. In 2008, treatment notes indicate that the diagnosis was continued as systemic sclerosis and she was restarted on Lisinopril. (AR 360.)

Plaintiff also received treatment at St. Francis Medical Center and Clinica Medica Virgin de Guadalupe. There are 165 pages of records from St. Francis and 101 pages from Clinica Medica Virgin de Guadalupe which document these symptoms, which continued. In addition there are 40 pages of records from Harbor UCLA which document that Plaintiff suffered from continued pain, weakness and swelling in her

joints. (AR 396.)

In May 2008, treatment notes indicate she again presented with joint pain over her body, back pain, shortness of breath, positive edema to upper and lower extremities, bilateral weakness of the upper and lower extremities, weak grip straight bilaterally and lower extremity weakness. (AR 401.) In other notes, it is indicated that Plaintiff complained of generalized fatigue, bilateral upper and lower extremity swelling, shortness of breath. In testing, there was an indication of scarring in her right lung and nodules in her left lung related to systemic sclerosis.[1]

An ALJ faces a high burden if he or she chooses to diminish Plaintiff's credibility. It must be based upon clear and convincing reasons. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1966), citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(citing Lester v. Chater, supra).

In this case, the factors cited by the ALJ, contained in the above quoted portion of his Decision, are irrelevant to a credibility determination, and come close to being a non sequitur. Indeed, the Court has had extensive difficulty in understanding the ALJ's articulation of his reasons for diminishing Plaintiff's credibility. The fact that Plaintiff sought and obtained treatment and was

---

[1] It is of some significance that the one consultative examiner, Dr. Lynn, failed to review any of these medical records. Without doubt, Dr. Lynn's failure to review any records, and instead rely only on a short, one-time examination, must reflect on the weight of his opinion, particularly in view of the fact that he is the only physician who rendered information as to Plaintiff's physical exertional abilities, and the ALJ substantially relied upon this opinion in his Decision.

prescribed powerful medications for her pain would seem, in itself, to support her credibility as to pain complaints, rather than to detract from it. The fact that her condition was difficult to diagnose is absolutely no fault of her own.

As to the ALJ's indication that Plaintiff's complaints are not consistent with the medical evidence of record and "other statements she made concerning her condition," this is so vague and ambiguous that the Court has no basis to review it. But a review of the medical records would seem to indicate that there is consistency between Plaintiff's pain complaints and the corroboration of those complaints by her doctors, who treated her and, as indicated, prescribed strong prescription medications.

Finally, Plaintiff claimed to be depressed as a result of her condition, but the ALJ found that this diminished her credibility because she has not sought treatment for depression. Again, the Court has difficulty understanding this rationale. It would seem obvious that a person who suffers from continuous and painful joint pain throughout her body would experience some depression. The fact that Plaintiff did not go to a psychiatrist or seek to be medicated for this depression has no relevance to the analysis. It is clear that Plaintiff used the term "depression" in the generic sense, not in the psychiatric context, and indeed, Plaintiff makes no claim here that she is disabled for mental health reasons. That is laudable, and should be considered along with her substantial work record. In other words, it would appear that Plaintiff has done her best to cope with her pain.

Plaintiff has asked the Court to remand the case for calculation of benefits. After some consideration, the Court declines to do so,

because it would seem clear that on remand, Plaintiff's RFC must be reevaluated carefully, and not just based upon the opinion of a DDS analyst and a one-time consultative examiner who never reviewed the extensive medical records. Further, on remand, none of the credibility factors cited in this decision will be relied upon.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: November 5, 2012                    /s/
                                           VICTOR B. KENTON
                                           UNITED STATES MAGISTRATE JUDGE